UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x

AZEEZAN KUMAR,

Plaintiff,

v.

FRANKLIN CREDIT MANAGEMENT CORPORATION,

Defendant.

---------------------------------------------------x

**MEMORANDUM AND ORDER**
25-CV-1475 (RPK) (TAM)

RACHEL P. KOVNER, United States District Judge:

Plaintiff Azeezan Kumar brings this action against defendant Franklin Credit Management Corporation seeking damages and other relief from alleged violations of consumer protection laws. Defendant moves to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion to dismiss is granted.

**BACKGROUND**

The following facts are drawn from the amended complaint and from documents incorporated by reference in that complaint. They are assumed true for the purposes of this order.

In June 2006, plaintiff obtained a mortgage on a property located at 128-09 Foch Boulevard in South Ozone Park, New York. Am. Compl. ¶¶ 7–8 (Dkt. #11). The mortgage was originally serviced by Litton Loan Servicing LP. *Id.* Ex. 18 at 2. In November of that year, defendant took over servicing responsibilities from Litton. *Id.* Ex. 18 at 3.

By 2021, plaintiff owed the lender $232,744.25 on the mortgage. *Id.* ¶ 13. That amount included a principal balance of $97,811.22, an interest balance of $134,042.48, and late fees of $890.55. *Ibid.* Plaintiff and the lender then executed a loan modification agreement that forgave

the late fees but capitalized the accrued interest, creating a new principal balance of $231,853.70. *Ibid.*; *id.* Ex. 7 at 2. The agreement explained that plaintiff "desire[d] to extend or rearrange the time and manner of []payment" of the mortgage and that the lender "agreed, at the request of [plaintiff]," to do so. *Id.* Ex. 7 at 2. Although the agreement was between plaintiff and the lender, it noted that plaintiff would send her payments to defendant and it was signed by defendant using the language "Franklin Credit Management Corporation as Attorney in fact for [lender]." *Id.* Ex. 7 at 2, 6.

In 2024, plaintiff sent defendant five letters requesting information about the mortgage. *Id.* ¶¶ 19–29. The letters each stated that they were "qualified written request[s]" sent pursuant to 12 U.S.C. § 2605(e). *Id.* Ex. 8 at 2 (dated May 1, 2024); *id.* Ex. 13 at 2 (dated June 18, 2024); *id.* Ex. 12 at 2 (dated August 1, 2024); *id.* Ex. 14 at 2 (dated September 13, 2024); *id.* Ex. 16 at 2 (dated October 23, 2024). In response, defendant sent plaintiff four letters and a tranche of accompanying documents. *See id.* Ex. 9 at 1 (dated June 24, 2024); *id.* Ex. 10 at 2 (dated July 22, 2024); *id.* Ex. 15 at 2 (dated September 24, 2024); *id.* Ex. 17 at 2 (dated November 6, 2024). The accompanying documents included a "Loan History Summary" that detailed payments and charges on the mortgage account between 2006 and 2024. *Id.* Ex. 10 at 2. It listed no information for a six-year period between 2010 and 2016. *Ibid.*

In 2025, plaintiff filed this lawsuit. Her amended complaint, which is the operative complaint, asserts that defendant received a $35,000 payment from her in 2020 but did not properly apply $34,396.48 of it to her mortgage account. *Id.* ¶ 41(i)(b)–(c). It also asserts that defendant charged her $31,870.86 in "excessive, illegal, and/or improper" fees, falsely represented those fees as accrued interest, and caused them to be capitalized into the mortgage's principal balance via the 2021 loan modification agreement. *Id.* ¶¶ 16–18. Finally, the amended complaint asserts that

defendant's responses to her 2024 letters were inadequate, including because of the six-year gap in loan history information between 2010 and 2016. *Id.* ¶¶ 19–31. Relying on those assertions, plaintiff seeks monetary relief under the Real Estate Settlement Procedures Act ("RESPA") (Counts I, II, and III), the Truth in Lending Act ("TILA") (Counts IV, V, and VI), the Fair Debt Collection Practices Act ("FDCPA") (Counts VII and VIII), and the New York Banking Law (Count IX), as well as an accounting (Count X).

Defendant moves to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6). *See* Mot. to Dismiss (Dkt. #15). Plaintiff opposes dismissal. *See* Mem. in Opp'n to Mot. to Dismiss (Dkt. #15-1). Both parties have also submitted supplemental briefs in response to a request by the Court. *See* Supp. Br. of Pl. (Dkt. #20); Supp. Br. of Def. (Dkt. #21).

**STANDARD OF REVIEW**

Rule 12(b)(6) directs a court to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The facial "plausibility standard is not akin to a probability requirement," but it requires a plaintiff to allege sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (quotation marks omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof [of the facts alleged] is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (quotation marks and citation omitted).

At the motion-to-dismiss stage, a court may consider only (1) the complaint itself, (2) documents either attached to the complaint or incorporated in it by reference, (3) documents

the plaintiff relied on and knew of when bringing suit, and (4) matters in the public record that are subject to judicial notice. *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). When reviewing the complaint, a court must accept the well-pleaded factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). The court is not, however, obligated to adopt "mere conclusory statements" or "threadbare recitals of the elements of a cause of action" that are not "supported by factual allegations." *Iqbal*, 556 U.S. at 678–79.

**DISCUSSION**

Defendant's motion to dismiss is granted because the amended complaint fails to state any claims to relief.

**I. RESPA Claims**

**A. Count I**

In Count I, plaintiff argues defendant violated both substantive and procedural aspects of Regulation X, which is RESPA's implementing regulation. *See* 12 U.S.C. § 2605(k)(1)(E). This count is dismissed because plaintiff has not plausibly alleged a violation of the regulation's substantive rules, and she has not plausibly alleged damages stemming from any potential violation of its procedural rules.

**1. Substantive Allegations**

12 C.F.R. § 1024.35 imposes "[e]rror resolution" requirements on loan servicers. Those requirements are triggered when a borrower sends a servicer a "qualified written request that asserts an error relating to the servicing of a mortgage loan." 12 C.F.R. § 1024.35(a). Upon receipt, the servicer must either "[c]orrect[] the error" or "[c]onduct[] a reasonable investigation" into the error and inform the borrower of its conclusion that "no error occurred." *Id.* § 1024.35(e)(1)(i).

Plaintiff asserts that defendant violated this provision of Regulation X because it did not correct or conduct a reasonable investigation into (1) the $35,000 payment she believes was misapplied in part, (2) the $31,870.86 in fees she believes were improperly charged, and (3) the six-year gap in the loan history. Am. Compl. ¶ 59. Her assertion is not plausible, however, because none of the letters she sent to defendant in 2024 stated that there had been errors. None contained the word "error" or equivalent language suggesting improprieties. Instead, all five letters simply requested information about the servicing of the mortgage. *See id.* Exs. 8, 12, 13, 14, 16. Since defendant did not receive a qualified written request asserting an error, it was not obligated to investigate or correct an error. *See Manfre v. Fay Servicing, LLC*, No. 24-CV-6067 (AMD) (LKE), 2026 WL 807179, at *4 (E.D.N.Y. Mar. 23, 2026) (rejecting a similar claim because "the plaintiff did not claim any error in the QWR; he requested information"); *Jackson v. Caliber Home Loans*, No. 18-CV-4282 (NG) (CLP), 2019 WL 3426240, at *6 (E.D.N.Y. July 30, 2019) ("Neither the February nor the March Letter . . . can be properly characterized as a notice of error because neither Letter states specifically how or why plaintiff believes the accounts are in error.").

Another provision, 12 C.F.R. § 1024.36, imposes requirements on loan servicers related to "[r]equests for information." Those requirements are triggered when the borrower sends a servicer a "qualified written request that requests information relating to the servicing of the mortgage loan." 12 C.F.R. § 1024.36(a). Upon receipt, the servicer must either "[p]rovide the borrower with the requested information" or "[c]onduct a reasonable search" and inform the borrower of its conclusion that "the requested information is not available." *Id.* § 1024.36(d)(1).

Plaintiff asserts that defendant violated this provision because it did not provide or conduct a reasonable search for information about (1) the $35,000 payment she believes was misapplied in part, (2) the $31,870.86 in fees she believes were improperly charged, (3) the six-year gap in the

loan history, and (4) "other specific information and documents requested." Am. Compl. ¶ 57(iv). As to the first two items, none of plaintiff's 2024 letters even mentioned them, let alone requested information about them. *See id.* Exs. 8, 12, 13, 14, 16. Since defendant did not receive a qualified written request seeking information about those items, it was not obligated to provide information about them or conduct a search for information. As to the third item, there is no indication that defendant's search was unreasonable. Defendant provided plaintiff a computer-generated loan history and explained that "[t]he transaction history does not include any records for the period of September 27, 2010 through October 11, 2016, because no payments, credits, or fees were applied to the account during that period." *Id.* Ex. 17 at 2. Although plaintiff characterizes this explanation as "implausibl[e]," *id.* ¶ 30, she offers no facts that would place it in doubt. Without any facts suggesting that there were actually payments, credits, or fees during the relevant six-year period, the amended complaint's assertion that defendant's search was unreasonable does not rise "above the speculative level." *Twombly*, 550 U.S. at 555; *cf. Santhosh v. Wells Fargo Bank, N.A.*, No. 25-CV-1447 (EK) (JAM), 2026 WL 1413883, at *4–5 (E.D.N.Y. May 20, 2026) (finding that a plaintiff plausibly alleged a defendant's search was unreasonable where the defendant's "explanation that some documents were unavailable due to its retention policy [was] undermined by" specific facts). Finally, plaintiff's catch-all allegation that defendant's response was deficient because it did not supply "other specific information and documents requested," Am. Compl. ¶ 57(iv), is too vague to support a plausible inference that defendant's substantial responses violated RESPA. *Cf. Chadee v. Ocwen Loan Servicing, LLC*, 243 F. Supp. 3d 1283, 1288 (M.D. Fla. 2017) ("Although [plaintiff] has made conclusory allegations that [defendant's] response [to her RESPA inquiries] was inadequate, the exhibits attached to [her] complaint suggest the

opposite."). If plaintiff made requests for information to which defendant did not adequately respond, she must identify them in order to state a claim.

**2. Procedural Allegations**

Both 12 C.F.R. §§ 1024.35 and 1024.36 require that a loan servicer respond to a borrower's "qualified written request" within a specified period of time. 12 C.F.R. §§ 1024.35(e)(3), 1024.36(d)(2). Plaintiff asserts that defendant violated those rules by failing to respond to her letters on time. Am. Compl. ¶ 59.

RESPA authorizes plaintiffs to sue for "actual damages" caused by noncompliance with the statute and, "in the case of a pattern or practice of noncompliance," for "additional" statutory damages. 12 U.S.C. § 2605(f)(1). As a result, "[t]o survive a motion to dismiss, a plaintiff bringing a [RESPA] claim must, in addition to showing defendant's failure to comply with the provisions of [RESPA], identify damages that he or she sustained as a result of defendant's alleged violation(s)." *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 444 (E.D.N.Y. 2013); *accord Kremenchutsky v. Citizens Bank N.A.*, No. 24-CV-1615 (NCM) (LKE), 2025 WL 1249623, at *6–7 (E.D.N.Y. Apr. 30, 2025); *Murray v. Newrez LLC*, No. 24-CV-6160 (ARR), 2025 WL 1158090, at *7–8 (E.D.N.Y. Apr. 21, 2025). The damages the plaintiff identifies must have been "proximately caused by the defendant's violation of RESPA." *Kapsis*, 923 F. Supp. 2d at 445 (citation omitted).

Even if defendant violated the time limits in 12 C.F.R. §§ 1024.35 and 1024.36, plaintiff has not plausibly alleged actual damages stemming from such violations. Her theory of damages is that defendant's responses to her letters caused her, in relevant part, "out-of-pocket costs, such as postage" for "preparing and sending" more letters; harm to creditworthiness; and emotional distress. Am. Compl. ¶ 41(ii)(a), (iii), (iv). She does not allege, however, that those damages were

caused by defendant's *delay* in responding to her letters. Instead, she alleges they were caused by defendant's substantive violations of 12 C.F.R. §§ 1024.35 and 1024.36, including its "failure to correct . . . errors," its "implausible explanations," and its "non-responsiveness" to her questions. *Ibid.* When pointing out the letters that caused her postage costs, for example, she lists all of defendant's letters, not just the letters that can plausibly be construed as late. *Id.* ¶ 41(ii)(a). Without a causal link between defendant's alleged *procedural* violations of 12 C.F.R. §§ 1024.35 and 1024.36 and plaintiff's postage costs, harm to creditworthiness, and emotional distress, her assertion of actual damages is conclusory. *See Kremenchutsky*, 2025 WL 1249623 at *6 (rejecting a claim of actual damages where plaintiff "failed to allege facts that demonstrate a causal connection between defendant's alleged RESPA violations and any emotional distress"); *Murray*, 2025 WL 1158090, at *8 ("Conclusory assertions of actual damages caused by a RESPA violation do not suffice.").

Because plaintiff has not plausibly alleged actual damages, she is not entitled to statutory damages. RESPA authorizes statutory damages only when they are "additional" to "actual damages." 12 U.S.C. § 2605(f)(1). In that way, the statute's "plain language indicates that 'an allegation of actual damages is necessary to state a claim for liability.'" *Murray*, 2025 WL 1158090, at *9 (citation omitted); *see also Rosendale v. Mr. Cooper Grp. Inc.*, No. 19-V-9263 (NSR), 2021 WL 4066821, at *13 (S.D.N.Y. Sep. 7, 2021) (collecting cases). Without actual damages, plaintiff has not stated a claim for procedural violations of Regulation X.

**B. Count II**

In Count II, plaintiff argues defendant violated 12 C.F.R. § 1024.38, another provision of Regulation X. Even assuming that a private right of action is available for violations of this regulatory provision, plaintiff's claim is dismissed because plaintiff has not plausibly alleged a violation.

12 C.F.R. § 1024.38 requires loan servicers to "maintain policies and procedures that are reasonably designed to" respond to letters from borrowers that assert errors or request information. 12 C.F.R. § 1024.38(a), (b)(1). Although the amended complaint contains no information about defendant's policies and procedures, it asserts the six-year gap in the loan history provided to plaintiff is circumstantial evidence of defendant's violation of this regulatory provision. Am. Compl. ¶ 66. As discussed with respect to Count I, however, the amended complaint contains no facts suggesting that the six-year gap is anything but an accurate representation of the loan history. Without factual support, that assertion is speculative, and it cannot support an inference that defendant failed to maintain reasonable policies and procedures. *See Mohamed v. Nationstar Mortg., LLC*, No. 20-CV-216 (EK) (LB), 2024 WL 4132351, at *6 n.7 (E.D.N.Y. Sep. 10, 2024) ("[Plaintiff] has not made sufficient allegations about [defendant's] 'policies and procedures' to survive a motion to dismiss.").

**C. Count III**

In Count III, plaintiff argues defendant violated 12 C.F.R. § 1024.39, another provision of Regulation X. This claim is dismissed because plaintiff has not plausibly alleged actual damages stemming from any potential violation.

12 C.F.R. § 1024.39 requires loan servicers to "make good faith efforts to establish live contact" with a borrower and "inform the borrower about the availability of loss mitigation options" within a specified period of time after the borrower becomes delinquent. 12 C.F.R. § 1024.39(a). The regulation defines "loss mitigation option" as "an alternative to foreclosure offered by the owner or assignee of a mortgage loan that is made available through the servicer to the borrower." *Id.* § 1024.31. Plaintiff asserts that "[u]pon information and belief," defendant either did not provide her the required information at all or did not timely provide it. Am. Compl. ¶ 72. Her theory of damages is that, if defendant had timely provided her the information, she

would have been able to "avoid[] or mitigate[]" "fees, interest, and other charges" to her account. *Id.* ¶ 73.

Plaintiff's theory fails because it is conclusory and speculative. As explained above, "to survive a motion to dismiss, [a] complaint must contain factual allegations suggesting that any damages plaintiff suffered were proximately caused by defendant's violations of [RESPA], and conclusory allegations to that effect will not suffice." *Kapsis*, 923 F. Supp. 2d at 445 (brackets, quotation marks, and citation omitted); *see Manfre*, 2026 WL 807179, at *4 ("[C]ourts have consistently dismissed complaints under RESPA if they . . . state merely that in a conclusory fashion the defendant caused damages to the plaintiff." (citation omitted)). Although the amended complaint asserts that information about loss mitigation options would have enabled plaintiff to avoid charges and fees, it does not specify which charges and fees are at issue or how the information would have enabled plaintiff to avoid them. And to the extent that plaintiff's claim is that information about loss mitigation options was not *timely* provided, the complaint does not state a causal connection between the delay and the charges and fees. Since the amended complaint has "failed to allege facts that demonstrate a causal connection between defendant's alleged RESPA violations and any" actual damages, it has not stated a claim under 12 C.F.R. § 1024.39. *Kremenchutsky*, 2025 WL 1249623 at *6; *see Jackson*, 2019 WL 3426240, at *7 ("[S]imply saying that, for example, the servicer's failure to [comply with the regulation] caused damages without specifying how those damages were caused, is not enough to survive a motion to dismiss." (quotation marks and citation omitted)).

## II. TILA Claims

Plaintiff asserts three claims that arise under TILA or under Regulation Z, TILA's implementing regulation. *See* 15 U.S.C. §§ 1604(a), 1639(p). In Count IV, plaintiff argues that the 2021 loan modification agreement charged her fees in violation of 15 U.S.C. § 1639(s), which

prohibits a "creditor, successor in interest, assignee, or any agent of any of the above" from charging "any fee to modify, renew, extend, or amend a high-cost mortgage." In Count V, plaintiff argues that "in connection with the servicing of Plaintiff's loan and the Modification," defendant violated 12 C.F.R. § 1026.36(d)(2)(i), which prohibits a mortgage "originator" from receiving "dual" payments from both a borrower and another person. Lastly, in Count VI, plaintiff argues defendant violated 15 U.S.C. § 1639f, which requires a "servicer" to credit payments made on a mortgage on the date they are received, because defendant failed to properly credit to her loan balance $34,396.48 of the $35,000 payment that she made in 2020.

All three claims are dismissed as time-barred. TILA claims must be filed "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e); *see Kremenchutsky*, 2025 WL 1249623, at *3. Plaintiff asserts that Count IV arises from the loan modification agreement, which was executed in 2021. Am. Compl. ¶¶ 85–86. She asserts that Count V arises from fees defendant charged her prior to 2021 and then caused to be capitalized into the principal balance as part of the loan modification agreement in 2021. *Id.* ¶¶ 16–18, 91. And she asserts that Count VI arises from defendant's failure to properly apply, in part, the $35,000 payment she made in 2020. *Id.* ¶ 95. Since this lawsuit was filed in 2025, which is four years after 2021 and five years after 2020, all three claims were filed after TILA's one-year limitations period had lapsed.

Plaintiff is not entitled to equitable tolling of TILA's statute of limitations. Equitable tolling is a doctrine available "in rare and exceptional circumstances," when a plaintiff can "show (1) that [s]he has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in the way of [her] bringing a lawsuit." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 801 (2d Cir. 2014) (quotation marks, brackets, and citation omitted). To satisfy the first requirement, a party must show that she "acted with reasonable diligence

throughout the period she sought to toll." *Latouche v. Wells Fargo Home Mortg. Inc.*, 752 F. App'x 11, 13 (2d Cir. 2018) (brackets omitted). To meet the second requirement, a plaintiff may rely on a defendant's "fraudulent concealment" of plaintiff's cause of action, *Ellul*, 774 F.3d at 801, meaning "that [d]efendant[] took some action to conceal the TILA violations during the one-year applicable statutory period following the" violations themselves, *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 287 (S.D.N.Y. 2011).

Plaintiff fails to present facts that would satisfy these requirements. Her primary equitable tolling theory is that defendant's deficient responses to her 2024 letters constituted fraudulent concealment. *See* Am. Compl. ¶ 43(i)(a); Mem. in Opp'n 19–20. But neither her letters nor defendant's responses to them were sent during the one-year limitations period following the alleged TILA violations. Defendant's actions in 2024, after the limitations period had already lapsed, cannot have "stood in the way" of plaintiff bringing suit. *Ellul*, 774 F.3d at 801.

Plaintiff's secondary theory is that the loan modification agreement itself fraudulently concealed the existence of plaintiff's TILA causes of action, through "failure to provide clear and accurate information regarding the loan's composition and . . . specific fees within the Modification." Am. Compl. ¶ 43(i)(b); *see* Mem. in Opp'n 19–20. As to Counts IV and V, this theory fails out of the gate because "[i]n cases involving TILA, the courts have held uniformly that fraudulent conduct beyond the nondisclosure" forming the basis for the TILA violation "is necessary to equitably toll the running of the statute of limitations." *Cardiello v. The Money Store, Inc.*, No. 00-CV-7332 (NRB), 2001 WL 604007, at *5 (S.D.N.Y. June 1, 2001), *aff'd sub nom. Cardiello v. The Money Store*, 29 F. App'x 780 (2d Cir. 2002) (quotation marks and citation omitted). "If [a violation] tolled the statute of limitations for a claim brought based on [that violation], the statute of limitations would have no effect." *Latouche*, 752 F. App'x at 14 (citation

omitted). Since plaintiff argues in Counts IV and V that the loan modification itself violated TILA, the loan modification cannot support equitable tolling for those claims.

As to Count VI, plaintiff's secondary equitable tolling theory fails because she does not set forth facts that would suggest she exercised reasonable diligence but nevertheless failed to discover that defendant did not credit $34,396.48 to her loan balance. If the principal balance described in the loan modification agreement did not accurately represent what plaintiff believed she had paid, then diligence should have led her to inquire further. *See Dodds v. Cigna Securities, Inc.*, 12 F.3d 346, 351 (2d Cir. 1993) ("Plaintiff 'cannot avoid the statute of limitations by possessing, but failing to read, the documents that would put [her] on inquiry notice.'" (citation omitted)). She could have inquired further by, among other methods, sending qualified written requests seeking the loan information she later sought in 2024. Since she does not allege that defendant "prevented or discouraged" her from learning the information at her disposal, but only that it failed to encourage her to do so, she has not plausibly alleged facts that suggest she was prevented through fraudulent concealment from discovering the information underlying her TILA claim despite her exercise of reasonable diligence. *Id.* at 352; *see Lorber v. Winston*, 962 F. Supp. 2d 419, 445 (E.D.N.Y. 2013) (declining to equitably toll a statute of limitations where plaintiff "chose to sign blank documents without reading them and to lend $6,000,000 from her Credit Line without monitoring it," and there was no allegation that "Plaintiff was prevented from inquiring about the state of the Credit Line").

## III. FDCPA Claims

Plaintiff asserts two FDCPA claims. In Count VII, plaintiff argues defendant violated 15 U.S.C. § 1692e, which prohibits a "debt collector" from using "false representation or deceptive means to collect" a debt. In Count VIII, plaintiff argues defendant violated 15 U.S.C. § 1692f,

which prohibits a "debt collector" from collecting payments not "expressly authorized" by contract or by law.

Both claims are dismissed because plaintiff has not plausibly alleged that defendant is a "debt collector." The FDCPA defines the term to mean "any person . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect" debts. 15 U.S.C. § 1692a(6). But the statute goes on to exclude from the term's definition "any person collecting or attempting to collect . . . a debt which was not in default at the time it was obtained by such person." *Id.* § 1692a(6)(F). "[A] complaint that 'does not allege that [a servicer] acquired [the plaintiff's] debt after it was in default . . . fails to plausibly allege that [the servicer] qualifies as a debt collector under the FDCPA.'" *Joseph v. Ocwen Fin. Corp.*, No. 22-1042, 2023 WL 3635077, at *2 (2d Cir. 2023) (summary order) (quoting *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 183 (2d Cir. 2014)); *see Johnson-Gellineau v. Stiene & Assocs., P.C.*, 837 F. App'x 8, 11 (2d Cir. 2020). Here, the amended complaint does not allege that plaintiff's debt was in default in November 2006, when defendant began servicing it. Am. Compl. Ex. 18 at 3. Accordingly, it has not stated an FDCPA claim.

## IV. State Law Claims

### A. Count IX

In Count IX, plaintiff argues defendant violated Sections 6-l and 6-m of the New York Banking Law. This count is dismissed because the Section 6-l allegation is time-barred and because Section 6-m does not apply to plaintiff's mortgage.

#### 1. Section 6-l

Section 6-l of the New York Banking Law imposes certain requirements with respect to "[h]igh-cost home loans." N.Y. Banking Law § 6-l. Actions brought under Section 6-l "must be commenced within six years of origination" of the relevant mortgage. N.Y. Banking Law § 6-l(6);

*see Feliciano v. U.S. Bank Nat'l Ass'n*, No. 13-CV-5555 (KBF), 2014 WL 2945798, at *4 (S.D.N.Y. June 27, 2014). Defendant argues that plaintiff's mortgage was originated in 2006, which would make this action—filed in 2025—untimely. Plaintiff responds that a new mortgage was originated in 2021 when she signed the loan modification agreement, which would make this action timely. Defendant has the better argument.

The question depends on whether plaintiff's loan modification agreement qualifies as a mortgage "origination" as the term is used in Section 6-l. In interpreting statutes, New York courts "construe unambiguous language to give effect to its plain meaning." *Walsh v. N.Y. State Comptroller*, 34 N.Y.3d 520, 524 (2019) (citation omitted). "In the absence of a statutory definition," words are construed "with their usual and commonly understood meaning, and in that connection [courts] have regarded dictionary definitions as useful guideposts." *Ibid.* (citation omitted).

The term "origination" is not defined in the New York Banking Law but is defined in the regulations promulgated under that law. According to the regulations, "*[m]ortgage origination* means for compensation or gain, either directly or indirectly, advancing funds to an applicant for a mortgage loan or a mortgagor as a mortgage loan." N.Y. Comp. Codes R. & Regs. tit. 3, § 422.2(e). Relatedly, "origination of a federally related mortgage loan" is defined as "including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of such loans." *Id.* tit. 3, § 419.1(n)(1). By referring to applicants or applications and to the advancement of funds, these definitions contemplate that a mortgage's origination occurs when the lender approves the borrower's application and extends funds.

Dictionary definitions support this understanding. Oxford English Dictionary defines "originate" as "[t]o give origin to, give rise to, cause to arise or begin, initiate, bring into existence."

*Originate*, Oxford English Dictionary (2d ed. 1989). Merriam-Webster Dictionary defines it as "to give rise to" or, in the context of mortgages, "to issue (a mortgage loan) usually for subsequent sale in a pool of mortgage loans to a secondary market." *Originate*, Merriam-Webster Online Dictionary (last visited Sep. 14, 2026); *see In re Kitts*, 442 B.R. 818, 826 (D. Utah 2010) (observing that "[d]efinitions in the mortgage lending context" generally "define 'origination' as the act of 'making or issuing' a loan"). These definitions suggest that a mortgage is originated when it is brought into existence.

Although there are few court decisions construing the statute of limitations in Section 6-l, they point in the same direction. They have held that a mortgage is originated either at the time it is first issued or at the time it is refinanced. *See In re 477 W. 142nd St. Housing Dev. Fund Corp.*, No. 20-CV-6771 (VEC), 2022 WL 2093418, at *1, *8 n.15 (S.D.N.Y. June 10, 2022) (first issued); *Durosene v. Bank of Am., N.A.*, No. 19-CV-4181 (JMA) (ARL), 2020 WL 3403083, at *1, *3 (E.D.N.Y. June 19, 2020) (first issued); *In re Merhi*, 518 B.R. 705, 708, 718 (Bankr. E.D.N.Y. 2014) (first issued); *In re Johnson*, No. 09-49420 (ESS), 2014 WL 4197001, at *1, *7 (Bankr. E.D.N.Y. Aug. 22, 2014) (first issued); *Feliciano*, 2014 WL 2945798, at *1, *4 (refinanced); *McLean-Laprade v. HSBC*, No. 12-CV-1774 (LEK) (ATB), 2013 WL 3930565, at *1, *8 (N.D.N.Y. July 30, 2013) (refinanced).

Here, plaintiff's 2021 agreement was expressly styled as a "loan modification agreement," not a refinancing agreement or an agreement to issue a new mortgage. Am. Compl. Ex. 7 at 1. The agreement stated that it "amend[ed] and supplement[ed]" the 2006 promissory note and that its purpose was "to extend or rearrange the time and manner of payment of [that] Note." *Ibid.* The agreement did not advance new funds to plaintiff nor impose a new lien on plaintiff's property. In a section titled "Renewal and Extension of Maturity," the agreement specified that "all liens . . .

are hereby renewed and extended until the indebtedness evidenced by the Note, as renewed, modified, and extended hereby, has been fully paid," and also specified that plaintiff "expressly waive[s] the benefit of any and all statutes of limitation, which might otherwise inure [to her] benefit, or be in any way applicable to [her] obligations." *Id.* Ex. 7 at 2. Those terms are consistent with a modification, not an origination. They also make clear that plaintiff was aware that at least some statutes of limitation would continue to be calculated from the date her mortgage was first issued in 2006 rather than from the date it was modified in 2021.

Plaintiff concedes that "[a]n ordinary modification does not re-originate . . . a loan" but argues that her modification was not ordinary because the promissory note was "reduced to judgment" prior to modification. Supp. Br. of Pl. 1. It is true that a state court entered a "judgment of foreclosure and sale" on her property in 2019. *See* Judgment of Foreclosure and Sale, *Deutsche Bank Nat'l Tr. Co. ex rel. Bosco Credit II Trust Series 2010-1 v. Kumar*, No. 701526/2017 (N.Y. Sup. Ct. Oct. 10, 2019), Dkt. No. 68. But the same court vacated that judgment in 2021, observing in its vacatur order that the parties were "resolving this action through a loan modification" rather than through foreclosure. Order of Discontinuance, *Deutsche Bank Nat'l Tr. Co. ex rel. Bosco Credit II Trust Series 2010-1 v. Kumar*, No. 701526/2017 (N.Y. Sup. Ct. Sep. 30, 2021), Dkt. No. 80. The loan modification agreement was executed approximately one month later. Am. Compl. Ex. 7 at 1. At the time of the modification, then, the promissory note was not reduced to judgment. This Court need not consider whether an agreement modifying a mortgage that actually *was* reduced to judgment would quality as a mortgage origination.

Accordingly, plaintiff's mortgage was originated in 2006, the statute of limitations on her Section 6-l claims expired in 2012, and this Section 6-l claim is untimely.

**2. Section 6-m**

Section 6-m of the New York Banking Law imposes certain requirements with respect to "[s]ubprime home loans." N.Y. Banking Law § 6-m. The provision applies only to mortgages "consummated on or after September 1, 2008." 2008 N.Y. Laws 3627; *see Emigrant Mortg. Co., Inc. v. Fitzpatrick*, 945 N.Y.S.2d 697, 700 (App. Div. 2012). Defendant argues that plaintiff's mortgage was consummated in 2006, which would make Section 6-m inapplicable. Plaintiff responds that a new mortgage, to which Section 6-m would be applicable, was consummated in 2021 when she signed the loan modification agreement. Defendant again has the better argument.

The term "consummated" carries a specific meaning in consumer protection law. TILA and its implementing regulation, Regulation Z, impose obligations on mortgage lenders that relate to the date a mortgage is consummated. *See, e.g.*, 15 U.S.C. § 1639c(a)(1). But Regulation Z has long defined "consummation" as "'the time that a consumer becomes contractually obligated on a credit transaction,' which is a question of state law." *Bentley v. Greensky Trade Credit, LLC*, 156 F. Supp. 3d 274, 288 (D. Conn. 2015) (quoting 12 C.F.R. § 226.2(a)(13)); *see Fitzgerald v. Chase Home Fin., LLC*, No. 10-CV-4148 (CS), 2011 WL 9195046, at *4 (S.D.N.Y. Feb. 28, 2011) ("Regulation Z does not determine when the consumer becomes contractually obligated to perform. Rather, state law governs the commencement of the consumer's contractual obligation." (citation omitted)); *Murphy v. Empire of Am., FSA*, 746 F.2d 931, 933–34 (2d Cir. 1984) (applying state law when answering the TILA consummation question). New York law, in turn, defines the time a consumer becomes contractually obligated on a mortgage transaction as the time the promissory note is executed. *See Murphy*, 746 F.2d at 934 (noting, prior to 2016, that "[t]he transaction is consummated when the lender and borrower sign a contract obligating them, respectively, to lend and to borrow the funds"); *see also* N.Y. Banking Law § 2(30) (defining,

since 2016, the term "consummation of a mortgage loan" as "when the applicant for the mortgage loan executes the promissory note and mortgage").

When the New York legislature stipulated that Section 6-m of the Banking Law would apply only to mortgages "consummated on or after September 1, 2008," 2008 N.Y. Laws 3627, it likely intended the meaning of "consummated" that was well established in consumer protection law. *See People v. Galindo*, 38 N.Y.3d 199, 205 (2022) ("The Legislature is . . . presumed to be aware of the decisional and statute law in existence at the time of an enactment." (citation omitted)). Decisions by New York courts construing Section 6-m support the same conclusion. *See Wells Fargo Bank, N.A. v. Iqbal*, 250 N.Y.S.3d 43, 46 (App. Div. 2026) (holding that a loan was "consummated" for purposes of Section 6-m at the time the borrower "obtained" it); *MCLP Asset Co., Inc. v. Callender*, 222 N.Y.S.3d 920 (Tbl.), at *1 (Sup. Ct. 2024) (holding that a loan was "consummated" for purposes of Section 6-m at the time it was "originated"). In one decision, a New York court concluded that a mortgage was "consummated" at the time the promissory note was executed and that a later "amendment to the note" did not constitute the consummation of a new mortgage. *U.S. Bank Nat'l Ass'n v. Jeffrey*, 142 N.Y.S.3d 905, 906–07 (Mem.) (App. Div. 2021).

Here, plaintiff's promissory note was executed in 2006, and no new note was executed in 2021 as part of her loan modification agreement. To the contrary, the agreement stated that it "amend[ed] and supplement[ed]" the 2006 promissory note and that its purpose was "to extend or rearrange the time and manner of payment of [that] Note." Am. Compl. Ex. 7 at 1. Similarly, the loan modification agreement did not obligate the lender to advance any new funds. As a result, the agreement did not consummate a new mortgage under New York law. Although plaintiff argues that the state court's 2019 judgment of foreclosure should affect this analysis, *see* Supp. Br.

of Pl. 4, the argument fails for the same reason it failed above: the judgment of foreclosure was vacated before the loan modification agreement was executed.

Accordingly, plaintiff's mortgage was consummated in 2006, and it is not covered by Section 6-m.

**B. Count X**

In Count X, plaintiff seeks an equitable accounting. This claim is dismissed because plaintiff has not plausibly alleged that she is entitled to one.

In New York, "a plaintiff seeking an accounting . . . must allege both a fiduciary relationship between the plaintiff and defendant and a breach of that fiduciary duty by the defendant." *Soley v. Wasserman*, 823 F. Supp. 2d 221, 237 (S.D.N.Y. 2011); *see Bd. of Mgrs. of Country Pointe at Smithtown N. Condominium v. Country Pointe at Smithtown Homeowners Ass'n, Inc.*, 240 N.Y.S.3d 100, 102 (App. Div. 2025). A fiduciary relationship exists "when one has reposed trust or confidence in the integrity or fidelity of another who thereby gains a resulting superiority of influence over the first, or when one assumes control and responsibility over another." *Soley*, 823 F. Supp. 2d at 232 (citation omitted). "The ordinary financial relationship between a mortgagor and a loan servicer does not . . . give rise to a fiduciary relationship" unless a fiduciary duty "is created by specific contractual language" or by other "special circumstances." *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427 (NGG) (RML), 2014 WL 4773991, at *24 (E.D.N.Y. Sep. 24, 2014) (quotation marks and citation omitted); *see Walts v. First Union Mortg. Corp.,* 686 N.Y.S.2d 428, 430 (App. Div. 1999).

The facts in the amended complaint do not support an inference that there is a fiduciary relationship between plaintiff and defendant. There does not appear to be a contract between the parties, and defendant is referenced only a handful of times across plaintiff's loan documents.

Those references all involve basic loan servicing tasks. *See, e.g.*, Am. Compl. Ex. 18 at 3 ("[P]lease send your payments and correspondence to [defendant]."); *id.* Ex. 6 at 2 ("All correspondence and any questions concerning your mortgage loan . . . should be directed to [defendant]."); *ibid.* ("[Defendant], as servicer, has authority to act with regard to the administration of your mortgage loan."); *id.* Ex. 7 at 2 ("The borrower[] will make such payments at [defendant's address], or at other such place as Note Holder may require."). Plaintiff has not alleged any additional special circumstances. On these facts, the relationship between plaintiff and defendant is an "ordinary financial relationship between a mortgagor and a loan servicer," not a fiduciary relationship. *Delgado*, 2014 WL 4773991, at *24.

It is true that New York courts have occasionally permitted plaintiffs to bypass the fiduciary relationship requirement "by treating the action for accounting as an action at law for monetary relief, and not as an equitable action for accounting." *Leveraged Leasing Admin. Corp. v. PacifiCorp Cap., Inc.*, 87 F.3d 44, 49 (2d Cir. 1996). In those cases, "[t]he accounting is merely a method to determine the amount of the monetary damages." *Ibid.* (quoting *Arrow Commc'ns Labs v. Pico Prods. Inc.*, 632 N.Y.S.2d 903, 905 (App. Div. 1995)). This treatment is inappropriate, however, where "discovery as to the measure of damages would be available" to plaintiff if she were to prevail on her claims at law. *Ibid.* Since discovery would be available if plaintiff if she were to prevail on her other claims in this suit, the Court declines to treat her request for an accounting as a request at law for monetary relief.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is granted.

Plaintiff's RESPA, TILA, and New York Banking Law claims are dismissed with prejudice because "repleading would be futile." *Goodrich v. Long Island R.R. Co.*, 654 F.3d 190, 200 (2d Cir. 2011). Her claim for an accounting is dismissed with prejudice because she already failed to remedy its deficiencies after being put on notice of them by defendant. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257–58 (2d Cir. 2018) ("When a plaintiff was aware 'of the deficiencies in his complaint when he first amended,' [s]he 'clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.' (brackets and citation omitted)); *see also* Mot. to Dismiss (Dkt. #10).

Plaintiff's FDCPA claims are also dismissed, but plaintiff may submit an amended complaint within two weeks of this Memorandum and Order that remedies the deficiencies with those claims identified herein. If plaintiff does not submit an amended complaint by that deadline, the dismissal of her FDCPA claims will also be with prejudice.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: October 2, 2026
Brooklyn, New York